IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK F. GILSON,<br>    **Plaintiff,**<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    **Defendant.** | )<br>)<br>)<br>) 1:14-cv-00232-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

April 22, 2015

## I. Introduction

Patrick F. Gilson ("Plaintiff" or "Gilson") brought this action for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which denied his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403. The parties have filed cross-motions for summary judgment. (ECF Nos. 8, 10), which have been fully briefed (ECF Nos. 9, 11) and are ripe for disposition. For the following reasons, Plaintiff's motion will be **DENIED**, and the Commissioner's motion will be **GRANTED**.

## II. Background

Plaintiff was born on October 7, 1961.[1] (R. 46). He is a high school graduate. He has past relevant work experience at the medium exertional level as a Returns Clerk, Inventory Clerk and

---

1. As of his alleged onset date, Plaintiff was 48 years old, making him a "younger person" under the regulations. 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work."). However, as of Plaintiff's 50th birthday he is considered a "person closely approaching

1

Packing Line Worker. Gilson engaged in only sporadic work after the alleged disability onset date of March 31, 2010. He worked for one week in May 2011 at a temporary agency and for two weeks in July 2011 stocking shelves at a Dollar General store. Administrative Law Judge Kenneth G. Levin ("ALJ") concluded that such work did not constitute substantial gainful activity.

A.   **Procedural History**

Plaintiff filed an application for DIB on February 24, 2012, alleging disability as of March 31, 2010, due to heart disease and psychiatric problems. After Plaintiff's claims were denied at the administrative level, he requested a hearing, which was held by video conference on March 5, 2013. Plaintiff was represented by counsel and testified at the hearing, as did two impartial medical experts and an impartial vocational expert ("VE").

On March 20, 2013, the ALJ rendered an unfavorable decision to Plaintiff, finding that he was not disabled through the date of the decision. (R. 61-73). Gilson has acquired sufficient quarters of coverage to remain insured through June 30, 2015. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. On August 29, 2014, Plaintiff filed his Complaint in this Court, in which he seeks judicial review of the decision of the ALJ.[2] The parties' cross-motions for summary judgment then followed.

---

advanced age." *Id.* § 404.1563(d). Whenever a person is "closely approaching advanced age," the Commissioner "will consider that his age along with a severe impairment(s) and limited work experience may seriously affect his ability to adjust to other work." *Id.*

[2] After the hearing with the ALJ, Plaintiff submitted additional medical evidence to the Appeals Council. Plaintiff recognizes that this Court's "Sentence Four" review is limited to the record as considered by the ALJ. Plaintiff's request for a "Sentence Six" remand will be addressed *infra*.

### B. Medical Evidence

Gilson has a medical history which pre-dates the onset of his disability including benign prostatic hyperplasia (BPH), chronic obstructive pulmonary disease (COPD), hyperlipidemia, hypertension, obesity and heavy smoking of cigarettes. He has a congenital heart block for which a pacemaker was installed in 2007. Gilson continued to work afterwards but was unable to maintain the required pace. On March 16, 2010 Gilson lost his job as a Returns Clerk and he has been unable to secure employment since that time.

The ALJ found that Gilson has the following severe impairments: a history of congestive heart failure and cardiomyopathy, COPD, obesity and adjustment disorder. The ALJ found that Gilson also suffers from high cholesterol, hypertension, obstructive sleep apnea, tinnitus, hearing loss, hand tremor, BPH and erectile dysfunction, and explained why none of these conditions rose to a severe impairment. R. 64.

Gilson first sought treatment for depression at Beacon Light Behavioral Health Systems in February 2012. Dr. Omar Eslao noted depression and anxiety that was increasing in the context of Gilson not finding a job and also noted a low sex drive. Dr. Eslao also noted a history of depressive episodes that had lasted less than two weeks such that they were not deemed "major depressive episodes." Dr. Eslao opined that Gilson's anxiety was not severe enough to be classified as an Anxiety Disorder. Gilson admitted to suicidal ideation, but without any specific plan. Gilson reported that his depression first started in 1984 when he learned of his former wife's infidelity. R. 386. Dr. Eslao assigned a GAF score of 55, which correlates with moderate symptoms or moderate difficulty in social and/or occupational functioning. R. 388. Dr. Eslao prescribed 150 mg of Trazodone. At a followup appointment in April 2012, Gilson reported that he was able to sleep better, but was still depressed. The dosage of Trazodone was

3

increased to 200 mg. R. 389. In May 2012, Gilson reported that he had a bout of depression and crying during the prior week, although he "feels better today" and that the increased dose of Trazodone made him too sleepy. The dosage was reduced to 100 mg and Dr. Eslao also prescribed Bupropion (Wellbutrin). R. 393. Gilson was diagnosed with Dysthymic Disorder and Major Depressive Disorder, Recurrent, Unspecified. At an October 5, 2012 appointment with Nurse Practitioner Abby Wenzel, Gilson reported that he was "not great but not bad" although he also stated that he was "more low than high." R. 398. Gilson had been unable to afford the Wellbutrin prescribed by Dr. Eslao and had decided on his own to decrease his Trazodone because his skin turned gray and he slept too much. Gilson was prescribed Celexa.

Mason Tootell, M.D., of the Warren Medical Group was Gilson's treating physician from February 2010 through July 2012 for various physical ailments, including COPD, hypertension, a cough (related to smoking), a hematuria, edema in legs and feet, warts, a fungal infection, hypertension, foot and hip pain, and arrhythmia associated with his pacemaker. Dr. Tootell noted that Gilson was being treated for depression by Dr. Eslao. On November 30, 2012, Dr. Tootell's impression was "three months of temporary disability." R. 379.

Beginning in September 2012, Gilson lost his insurance and began to receive medical care at the Veterans Administration Medical Center ("VA") with Jennifer Bulger, M.D. Gilson reported that he could "carry at least twenty-four pounds up flight of 8 stairs," which Dr. Bulger classified as NYHA Class I. The ALJ explained that this designation is consistent with "no limitation of physical activity." R. 68. Dr. Bulger modified Gilson's depression medications, set up a behavioral health counseling session and advised him to return to the clinic in twelve months. Gilson declined services regarding his obesity. On September 28, 2012, Gilson had a mental health evaluation with Sarah Goebel, MSW, LCSW-R, at which he requested help with

4

depression, anxiety and quitting smoking. Ms. Goebel assigned him a GAF score of 55. R. 348. On November 1, 2012, Gilson had a followup appointment with Ms. Goebel, who noted that Gilson had continued to look for work but without success. On November 29, 2012, Gilson met with Gabriel N. Holland, D.O. Dr. Holland noted that the Celexa had caused tinnitus, diagnosed Gilson with an "adjustment reaction," and prescribed Wellbutrin. On December 10, 2012, Gilson met again with Ms. Goebel and reported no side effects from the Wellbutrin. She assigned him a GAF score of 60. R. 408. She noted that Gilson did not desire continued services. R. 407. In her January 2013 note, Ms. Goebel described Gilson as alert and oriented/3, neat and clean, mostly appropriate, open, cooperative, logical, teachable and goal oriented, but wanting to have improved mood and sleep. He showed no signs of psychosis or thought disorder and was independent in his activities of daily living. He continued to have adjustment disorder, mixed, but was responding well to his medications and therapy. R. 415. Gilson reported that his depression had been mild over the past two weeks. R. 417.

In March 2012 Gilson reported that he went to the store, to town, and on trips with his wife (who has significant medical issues) and helped his mother clean the church. R. 245. He reported the ability to care for his personal needs, prepare meals, perform household tasks such as vacuuming and cutting the grass, shopping for meals, handling finances, and driving a car. Gilson reported "some difficulty concentrating when listening to instructions." R. 246. He was able to follow written instructions "very well." Gilson reported no difficulties in getting along with others, including authority figures, and stated: "I get along with everybody well." R. 247. In a supplemental function questionnaire, Gilson reported cramps in his legs and feet from walking extended distances or standing/sitting in one place for 30-45 minutes, and also back pain if he lay down for over five hours. R. 250.

Kerry Brace, Psy. D., completed a Disability Determination Explanation in April 2012 based on a records review. He opined that Gilson had only "mild difficulties in social functioning." R. 313. Dr. Brace opined that Gilson's ability to sustain an ordinary work routine without special supervision, to maintain regular, punctual attendance, and to work in coordination with and in proximity to others was not significantly limited. R. 316. Dr. Brace opined that Gilson could meet the basic mental demands of competitive work on a sustained basis. R. 317. The ALJ gave this opinion "great weight." R. 71.

In April 2012, Paul Fox, M.D., performed a records review. Dr. Fox noted that Gilson was able to independently perform routine household activities; had stopped work for reasons unrelated to his alleged disabilities; and that his treatment for his medical conditions had been routine, conservative and generally successful. R. 315.

Noah Robbins, M.D., an independent medical reviewer, testified at the hearing that Gilson did not meet any of the Listed Impairments, although he noted the lack of an ECG or pulmonary function test to show the extent of his cardiomyopathy and COPD. Dr. Robbins initially based his opinion on a "worst case scenario" in which such tests would show significant disease. Dr Robbins testified that in his worst case, Gilson might be limited to lifting ten pounds occasionally, walking not more than two hours, sitting up to six hours with allowances to stand after an hour to stretch his legs. R. 105. Upon questioning by the ALJ, Dr. Robbins agreed that the heart issue may have been fully addressed by the installation of the pacemaker in 2007 and that COPD would not limit a person's ability to stand. R. 108. Dr. Robbins then modified his opinion accordingly.

Carlos M. Jusino-Berrios, M.D., testified at the hearing as an independent psychological expert. He noted a history of dystemic disorder, major depression and adjustment disorder, but

6

noted that those conditions had arisen less than twelve months prior to the hearing date and that Gilson had made a moderate improvement with treatment. Dr. Jusino-Berrios opined that Gilson did not have a Listed Impairment and did retain the mental capacity to perform work. R. 114. Gilson's attorney chose not to cross-examine the witness.

The hypothetical posed to the VE included restrictions on lifting up to ten pounds, sit for six hours with the option to get up and stretch every hour if needed, stand for up to six hours and walk for two hours. The only mental restriction included in the hypothetical was that the person be limited to simple, routine work. The VE testified that numerous light, unskilled positions existed, including parking lot attendant, ticket taker and mail clerk.

The ALJ carefully followed the applicable five-step analysis. He found that Gilson had not engaged in substantial gainful activity since March 31, 2010 and that he had severe impairments of congestive heart failure and cardiomyopathy, COPD, obesity and adjustment disorder. Of note, the ALJ did not find that Gilson's depression was a severe impairment. The ALJ expressly stated that he had considered Gilson's obesity alone and in combination with other impairments. The ALJ explained that he had first determined that Gilson's mental impairments did not rise to a Listed Impairment and then separately engaged in a more-detailed analysis of how those mental impairments affected Gilson's residual functional capacity ("RFC"). R. 66. The ALJ also explained at length that the intensity, persistence and limiting effects of Gilson's symptoms were not substantiated by the objective medical evidence or his activities of daily living. R. 67-71. The ALJ found that Gilson could not perform his past work, but could perform a limited range of light work such that he is not disabled.

7

## III. Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per

8

se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

When a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

## B. Discussion

Plaintiff raises essentially three arguments. First, he contends that the hypothetical posed to the VE wrongfully failed to account for what the ALJ allegedly found to be a moderate impairment in Gilson's ability to maintain social functioning. Second, Plaintiff contends that the ALJ failed to properly evaluate the medical and non-medical evidence, particularly as to Dr. Robbins' initial opinion that Gilson might have restrictions on standing and the effect of Gilson's obesity. In the alternative, Plaintiff requests a "sentence six" remand for consideration of medical records that were obtained after the administrative hearing. Finally, Plaintiff contends that the ALJ erred in assessing the credibility of Gilson's testimony. None of these contentions have merit.

### 1. Hypothetical posed to the VE

There is substantial evidence to support the ALJ's conclusion that Gilson's mental impairments did not adversely affect his residual functional capacity to perform work other than limiting it to simple, routine tasks. Thus, the hypothetical posed to the VE was not in error. The ALJ concluded that "with therapy and medication, the claimant's depression is largely stable." R. 67. The ALJ expressly explained that the reference to "moderate impairment in social functioning" was made in the context of step 3 (whether Gilson's mental conditions arose to a Listed Impairment) and that the ALJ had performed a separate, more-detailed analysis of Gilson's RFC for step 5. R. 66. The ALJ then discussed the objective medical treatment notes, GAF scores, and various medical assessments of Gilson's abilities to interact with others. For example, in determining the RFC the ALJ gave "great weight" to the opinion of Kerry Brace, Psy. D. who opined that Gilson had only "mild difficulties in social functioning." R. 71. The

ALJ also cited the opinion of Dr. Jusino-Berrios that Gilson could perform competitive work. R.71. There is substantial evidence in support of the ALJ's determination.

2. Evaluation of the Medical and Non-medical Record

The ALJ properly evaluated the medical and non-medical record. Dr. Robbins initially provided an opinion based on a "worst case scenario." The ALJ then asked a series of questions to ascertain whether that "worst case" was appropriate, given the remainder of the medical evidence. The real issue was the lack of any objective medical diagnostic tests (an ECG and a pulmonary function test) regarding the extent of Gilson's heart and lung problems. Dr. Robbins agreed that the "worst case" was not appropriate and revised his opinion. The ALJ then accorded significant weight to the revised opinion, as he explained in his decision. R. 69. The ALJ's evaluation of Dr. Robbins' opinion and refusal to endorse the "worst case scenario" was entirely proper and well-supported by the record. In particular, the ALJ explained that Gilson had been classified as NYHA 1 (no physical limitations) and that Dr. Tootell's pulmonary examinations were unremarkable. R. 68. At most, Dr. Tootell noted that Gilson had only a three-month temporary disability. R. 379. The medical record as a whole supported the ALJ's conclusion that Gilson's physical conditions did not prevent him from performing light work.

The ALJ properly analyzed the effects of obesity even though Gilson had not claimed disability due to obesity. The ALJ nevertheless considered the effects of Gilson's obesity both alone and in combination pursuant to SSR 02-1p. The ALJ observed that Gilson was able to perform such tasks as vacuuming, gardening, mowing grass and using a snowblower. The ALJ further properly assessed and explained that Gilson's obesity and other conditions had only limited impact on his actual functional capacity. *Diaz v. Commissioner*, 577 F.3d 500, 504 (3d Cir. 2009); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

11

3. Sentence Six Remand

After the administrative hearing, Plaintiff's counsel arranged for a ECG and a pulmonary function test. These records were not provided to the ALJ. Plaintiff argues that the case should be remanded so that the ALJ could consider these tests. As explained in *Matthews v. Apfel,* 239 F.3d 589, 593 (3d Cir. 2001) (citations omitted), "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."

Defendant opposes remand and contends that the evidence is not "new"; is not "material"; and that Plaintiff failed to demonstrate good cause for not obtaining such evidence prior to the administrative hearing. The Court agrees with Defendant that a "Sentence Six" remand is not appropriate. Gilson could have asked his treatment providers at the VA to conduct an ECG and functional capacity test in advance of the administrative hearing. Moreover, the functional capacity evaluation performed on April 24, 2013 by Michelle Marion, PT, DPT actually provided further support for the ALJ's conclusion that Gilson could perform light (or medium) exertion work and could likely work an eight-hour day. R. 504. Thus, the new evidence would not be likely to change the result and is not material.

4. Credibility Determinations

Plaintiff, finally, criticizes the ALJ's credibility determinations and failure to fully credit Gilson's testimony regarding his limitations. It is the ALJ's responsibility to make credibility findings regarding subjective complaints based on his interaction with the claimant. "Generally, the ALJ's assessment of a plaintiff's credibility is afforded great deference, because the ALJ is in the best position to evaluate the demeanor and attitude of the plaintiff." *Ayers v. Astrue*, 724 F.

Supp.2d 471, 479 (D. Del. 2010). Here, Plaintiff takes issue with the ALJ's comment that Gilson received "only routine and conservative care," which Plaintiff attributes to his financial situation. It is clear from the ALJ's opinion and the underlying medical records, however, that the ALJ's comment was well-supported – the treatment notes showed, as the ALJ accurately stated, a generally stable condition and largely unremarkable physical and mental status examinations which were consistent with conservative treatment. Plaintiff also argues that the ALJ failed to connect his credibility determinations about daily activities to the limitations on his activities. To the contrary, the ALJ directly explained why he felt that Gilson's activities of daily living were inconsistent with a finding of total disability. R. 68.

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a limited range of work at the light exertional level.

For these reasons, the Court will **DENY** the Motion for Summary Judgment filed by Plaintiff and **GRANT** the Motion for Summary Judgment filed by the Commissioner. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK F. GILSON,<br>    **Plaintiff,**<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    **Defendant.** | ) ) ) ) ) 1:14-cv-00232-TFM ) ) ) ) ) ) ) |

## ORDER

**AND NOW**, this 22nd day of April, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 8) is **DENIED**, and Defendant's MOTION FOR SUMMARY JUDGMENT (ECF No. 10) is **GRANTED**.

                  BY THE COURT:

                  s/ Terrence F. McVerry
                  United States District Judge

cc: **Beth Arnold**
   Email: fedcourt@binderlawfirm.com

   **Christian A. Trabold**
   Email: christian.a.trabold@usdoj.gov